IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ANGELIQUE BRANCH and  PLAINTIFFS
SHAMBERISHA HERNDON

V.  NO. 4:18-CV-250-DMB-RP

CARROLL COUNTY, MISSISSIPPI;
SHERIFF CLINT WALKER, in his
official capacity; and DEPUTY
OFFICER ROSHAUN DANIELS, in
his individual and official capacity  DEFENDANTS

**ORDER**

Before the Court is the defendants' motion for summary judgment. Doc. #46. For the reasons explained below, summary judgment will be granted in the defendants' favor on the plaintiffs' federal claims, and the plaintiffs' state law claims will be dismissed without prejudice.

**I**
**Procedural History**

On December 11, 2018, Angelique Branch and Shamberisha Herndon filed a complaint in the United States District Court for the Northern District of Mississippi against Carroll County, Mississippi; Sheriff Clint Walker, in his official capacity; and Deputy Roshaun Daniels, in his individual and official capacity. Doc. #1. The complaint, which arises from events following a car accident involving the plaintiffs and Daniels, contains eight counts: (1) "injunction prohibiting future conduct of a similar character, kind or nature;" (2) "violation of federal due process, equal protection, [and] civil rights laws under 42 U.S.C. §1983 and 28 U.S.C. §1343 et al.;" (3) "excessive force;" (4) "civil assault and battery;" (5) "negligent, grossly negligent, and wanton failure in hiring and to monitor, train, and supervise the deputies involved;" (6) "intentional and/or negligent infliction of emotional distress;" (7) "reckless disregard;" and (8) "negligence/gross

negligence." *Id.* at 3–7. The defendants answered the complaint on January 28, 2019, asserting multiple defenses, including qualified immunity and protection under the Mississippi Tort Claims Act. Doc. #9.

On October 9, 2019, the defendants filed a motion for summary judgment. Doc. #46. The motion is fully briefed. Docs. #47, #50, #54.

## II
## Summary Judgment Standard

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(a). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant. A court should enter summary judgment against a party when it has the burden of proof at trial yet fails to establish an element of its case." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020).

## III
## Relevant Facts

### A. The Accident

On December 23, 2017, at approximately 11:00 p.m., Angelique Branch and her cousin Shamberisha Herndon were traveling in Branch's car through Carrollton, Mississippi, on their way to a family party. Doc. #46-1 at PageID ##125–27. After Branch, who was driving, stopped the car at a four-way stop sign, Carroll County Deputy Sheriff Roshaun Daniels hit the car from behind with his police cruiser while patrolling the town. *Id.* at PageID #126; Doc. #46-3 at PageID #172. When the vehicles collided, the airbags in Branch's car did not deploy, and Branch's car moved

forward "just a little bit." Doc. #46-1 at PageID #129.

Following the collision, Branch and Daniels each exited their respective vehicles. *Id.* at PageID #126; Doc. #46-3 at PageID #173. Branch asked Daniels why he hit her car and began "cussing" at him. Doc. #46-1 at PageID #126; Doc. #46-3 at PageID #173. Daniels did not answer the question or ask if the women were hurt. Doc. #46-1 at PageID #126. Herndon then exited Branch's car to try and calm down Branch, who had begun crying, and Herndon also began "cussing" at Daniels. Doc. #46-2 at PageID ##148, 152; Doc. #46-3 at PageID #173. Daniels radioed for backup. Doc. #46-3 at PageID #173. Daniels advised the women to calm down or he would arrest them for disorderly conduct. *Id.* at PageID #175.

A witness, Jordan Arender, while in his vehicle,[1] "noticed a law officer having an altercation with two black females. One was hitting and pushing the officer and the other female was out of the car approaching the officer as well. They were both hollering and cussing the officer." Doc. #46-5 at PageID #192. Arender exited his vehicle and stood behind Daniels to ensure that "the other female did not interfere" while Daniels asked one of the women[2] to place her hands behind her back. *Id.* Daniels then held Branch by the arm and moved her towards his vehicle, preparing to handcuff her. Doc. #46-3 at PageID ##175–76. He stopped when Herndon came towards him. *Id.* Daniels told Herndon to get back in the car but when she continued yelling, he let go of Branch and moved to grab Herndon. *Id.* Before he reached Herndon, both she and Branch re-entered Branch's car.[3] Doc. #46-2 at PageID #152; Doc. #46-3 at PageID #176; Doc.

---

[1] Arender says he pulled up to a stop sign at the intersection. Doc. #46-5 at PageID #192. Branch's testimony places Arender at a gas station, next to the intersection, observing the incident. Doc. #46-1 at PageID #126. Daniels says Arender was at the stop sign. Doc. #46-3 at PageID #176.

[2] Arender does not clarify which woman was asked to place her hands behind her back. Doc. #46-5 at PageID #192.

[3] A second witness, Ellis Henry Roberts Jr., provided a handwritten statement on a standard form of the Carroll County Sheriff's Office signed by him and Deputy Therrell Turner. *Id.* at PageID #193; *see* Doc. #46-3 at PageID #185. According to his statement, Roberts stopped behind Daniels' vehicle and observed the women outside of the vehicle

3

#46-1 at PageID #126.

Daniels then reached inside of Branch's car to grab Herndon. Doc. #46-1 at PageID #126; Doc. #46-3 at PageID #175; Doc. #46-5 at PageID #192. What happened next is in dispute. Herndon testified that both Daniels and Arender put their hands around her neck. Doc. #46-2 at PageID ##154–55. Daniels testified that he grabbed Herndon by the arm. Doc. #46-3 at PageID #175. Arender's witness statement reports that Daniels "reached in [Branch's car] to grab [Herndon's] jacket." Doc. #46-5 at PageID #192.

About that time, Herndon began to record the events using her cellphone. Doc. #46-1 at PageID #126–27. The video[4] reflects the following: Daniels standing outside of Branch's car; Herndon saying, "Roshaun Daniels ran into the back of us" and "he is out here pulling on me;" Daniels reaching inside of the car, at which point the picture becomes unclear and one of the women can be heard screaming; Daniels again standing outside of the car; Herndon telling him she is pregnant;[5] and Daniels responding that he does not care. Doc. #46-4. Daniels says, "get out the car," on at least two occasions during the video. *Id.* Before the video ends, Herndon says, "you stop pulling on me, you don't know what is going on" and "I ain't going to jail." *Id.*

After taking the video, Herndon called 911 because no other officers had arrived on the scene. Doc. #46-2 at PageID #153. Eventually, Deputy Jamie Taylor arrived at the scene to investigate the accident. Doc. #46-1 at PageID #127. After a conversation with the chief deputy,[6]

---

with Daniels "cussing and fighting." Doc. #46-5 at PageID #193. The statement does not describe any physical contact among them except to state that one of the women looked like she was going to push Daniels. *Id.*

[4] The defendants submitted the video as an exhibit to their motion for summary judgment. Doc. #46-4. It appears to be a screen recording of a Facebook Live broadcast.

[5] A pregnancy test administered to Herndon later that night was negative. Doc. #46-2 at PageID #149. Herndon admitted she lied about being pregnant so that Daniels would "stop pulling" on her. *Id.*

[6] The chief deputy's name is not indicated in the summary judgment record.

4

Daniels ultimately did not arrest either of the women that night and chose not to charge them afterwards. Doc. #46-3 at PageID ##175–76.

### B. Injuries and Damage

At the accident scene, Branch complained of a sharp pain in her lower back. Doc. #46-1 at PageID ##129–30. She also complained of neck pain. *Id.* at PageID #130. She was taken to the hospital by ambulance, where x-rays were taken of her lower back, and was given a prescription for pain.[7] *Id.* In the months following the accident, Branch made at least three trips to various hospitals because she suffered from continuing back pain. *Id.* at PageID ##130–31. Additionally, Branch visited a chiropractor for treatment of her back and neck. *Id.*

Herndon was also taken by ambulance to the hospital because her back "was hurting." Doc. #46-2 at PageID #150. There, x-rays were taken of her lower back. *Id.* She too visited a chiropractor after the accident. *Id.* Herndon stated she had no other injuries from this car accident.[8] *Id.* at PageID #153.

The only damage to Branch's car was a dent, which Branch had fixed for $64, and two marks on either side of the license plate. Doc. #46-1 at PageID ##128–29.

### IV
### Qualified Immunity

The defendants assert qualified immunity on the plaintiffs' federal claims against Daniels,[9] arguing that the plaintiffs cannot show a violation of a constitutional right and that Daniels' actions were objectively reasonable. Doc. #47 at 6–21.

---

[7] Branch did not remember what the x-rays found or what medication was prescribed. Doc. #46-1 at PageID #130.

[8] Herndon was involved in another car accident two days later where her vehicle was totaled. Doc. #46-2 at PageID ##153–54. She claims only her thumb was injured in the second accident. *Id.*

[9] The defense of qualified immunity does not apply to official capacity claims. *Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011). And a municipality is not entitled to qualified immunity. *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tex. 2000).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Zadeh v. Robinson*, 928 F.3d 457, 463–64 (5th Cir. 2019) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011)). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). A defendant satisfies this burden by "establishing that the challenged conduct was within the scope of his discretionary authority," meaning the conduct that occurred was a "non-ministerial act[] within the boundaries of his official capacity." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019).

"A plaintiff must make a two-part showing to overcome a qualified immunity defense. First, a plaintiff must show that the official violated a statutory or constitutional right; second, she must show that the right was clearly established at the time." *Voss*, 954 F.3d at 238. A court "can analyze the prongs in either order or resolve the case on a single prong." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

There is no dispute that the acts complained of fall within the scope of Daniels' discretionary authority. Accordingly, to defeat summary judgment, the plaintiffs must show a genuine issue of material fact as to whether Daniels violated a clearly-established statutory or constitutional right.

### A. Constitutional Violation

The plaintiffs' complaint alleges that the defendants "took actions to deprive Plaintiffs of their due process rights and equal protection rights," and violated their Fourth Amendment protection against excessive force. Doc. #1 at 4. The defendants argue in their summary judgment motion that there is no equal protection or due process issue and that Daniels' actions did not

violate the Fourth Amendment. Doc. #47 at 7–9. The plaintiffs respond that the defendants violated their First Amendment right to freedom of speech as well as their "right to be free from excessive force illegal and unreasonable arrest and detainment set forth in the Fourth and Fourteenth Amendment." Doc. #50 at 4.

### 1. Fourteenth Amendment claims

The defendants argue that (1) the plaintiffs did not identify a due process violation because "[t]he United States Constitution does not include a 'freestanding' right to be free from malicious prosecution" and the plaintiffs did not show that "state court procedures were facially inadequate;" and (2) because Daniels and the plaintiffs are the same race, there is not a valid equal protection claim unless they proceed under a "class of one" theory. Doc. #47 at 7-8. In response, the plaintiffs, citing only their complaint, argue only that the allegations in the complaint are enough to assert claims for the violation of their due process and equal protection rights. Doc. #49 at 9.

At the summary judgment stage, while all evidence is viewed "in the light most favorable to the non-movant, the non-movant must still come forward with specific facts indicating a genuine issue for trial and cannot merely rely on the allegations in the complaint." *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 128 (5th Cir. 2017) (internal quotation marks omitted). However, in response to the motion for summary judgment, the plaintiffs point only to the allegations of their complaint to support a violation of their due process and equal protection rights. Because they do not indicate specific facts supporting their claims, the plaintiffs have failed to establish a Fourteenth Amendment violation.

### 2. First Amendment claims

The plaintiffs' complaint does not contain any reference to the First Amendment or any details that would put the defendants on notice of such a claim. *See* Doc. #1. The First Amendment

7

argument is raised for the first time in the plaintiffs' response memorandum. Doc. #50 at 4. In their reply, the defendants argue that the plaintiffs' First Amendment claim should be construed as a motion to amend the complaint. Doc. #54 at 1.

A claim raised for the first time in response to a motion for summary judgment, as here, is not properly before the Court. *Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016). "[W]hen a response to a motion for summary judgment asserts a new claim, a district court should construe the response as a motion to amend the complaint." *Tubwell v. Specialized Loan Serv., LLC*, No. 3:17-CV-15-DMB-RP, 2019 WL 1446362, at *6 (N.D. Miss. March 29, 2019) (citing *Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996)). In *Tubwell*, this Court construed a new claim in response to a motion for summary judgment as a request to amend, and denied leave to amend because the request was untimely, a proposed amended pleading was not included, and allowing amendment at the summary judgment stage after such "undue delay" would cause "inevitable resulting prejudice to the defendants." *Id.*

Construing the plaintiffs' First Amendment argument in their response as a motion to amend, the Court denies leave to amend for the same reasons as in *Tubwell*. Here, the deadline to seek leave to amend was April 18, 2019, six months before the plaintiffs filed their summary judgment response. Doc. #23. Additionally, there is no proposed amended pleading in compliance with this Court's local rules. *See* L.U. Civ. R. 7(b)(2). Further, because granting leave to amend at this late stage in the proceedings, with trial now approximately a month away, would cause prejudice to the defendants, leave to amend is not justified. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming denial of leave to amend where "the plaintiffs did not propose their amendment until well over a year after they had instituted their actions and several months after discovery on the actions had effectively terminated [and] by the time the plaintiffs

8

proposed their amendment, [defendant] had already moved for summary judgment") .

### 3.  Fourth Amendment claims

The defendants argue that there was no Fourth Amendment violation because "it was reasonable for Deputy Daniels to attempt to settle the situation down, even to the point of handcuffs," and "Deputy Daniels did not use excessive force."  Doc. #47 at 8–9.  The plaintiffs argue that "there can be no doubt that Defendant Daniels 'seized' both Plaintiffs Branch and Herndon within the meaning of the Fourth Amendment," and "Defendant Daniel's force in seizing Plaintiffs Branch and Herndon was objectively unreasonable."  Doc. #50 at 5–6.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted).  "To establish a Fourth Amendment excessive-force claim, a plaintiff must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable."  *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (internal quotation marks omitted).  "[P]roper application [of the Fourth Amendment reasonableness standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

####  a.  Seizure

The plaintiffs contend that Daniels seized them when he "crashed his patrol vehicle into Plaintiff Branch's vehicle with no cause [and] Branch could not leave the scene because she [was] required by law to call the police."  Doc. #50 at 5.

9

Violations of the Fourth Amendment require an "intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). A Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id*. at 596–97. Thus, for the accident to be considered a seizure, the plaintiffs must show an intentional act by Daniels when he crashed into the car. Because the plaintiffs did not provide any evidence that the accident was intentional, there is nothing to indicate that the accident itself constitutes a seizure. However, it is undisputed that Daniels intended to arrest Branch and Herndon following the accident. Viewing the facts in the light most favorable to the plaintiffs, there is a genuine issue of material fact regarding whether there was a seizure, and the question becomes whether the force used was reasonable.

### b. Force against Branch

The defendants argue that Branch cannot show she suffered an injury that resulted directly from the use of excessive, unreasonable force because Branch complained only of back and neck pain, and because Daniels only used force against Branch when he held her by the arm while walking her back to his car before attempting to put handcuffs on her. Doc. #47 at 11–16. The defendants rely on Branch's testimony that it was not Daniels who used excessive force but the witness Arender. *Id*. at 15.

In response, Branch contends that "Daniels became physical with Plaintiff Branch, grabbing her by the arm and pushing and pulling on her to place her under arrest after he had just crashed into her vehicle." Doc. #50 at 5. But Branch fails to cite to any evidence to support this statement, not even her own deposition. Based on the evidence before this Court, Daniels only used force against Branch when he attempted to handcuff her. Because "it is reasonable for an officer to attempt to grab a noncompliant suspect's arm in an attempt to handcuff the suspect,"

10

*Trammell v. Fruge*, 868 F.3d 332, 343 n.9 (5th Cir. 2017), Branch fails to show how this force was unreasonable. Due to Branch's failure to show a constitutional violation for excessive force, summary judgment is appropriate.

### c. Force against Herndon

The defendants argue that Herndon cannot establish an excessive force claim because she did not suffer any injury because of the alleged excessive force. Doc. #47 at 16. They base their argument on Herndon's testimony that the excessive force occurred when a witness and Deputy Daniels put their hands around her neck but assert that Herndon "failed to report any type of neck injury to the EMTs or paramedics, claiming only lower back injuries." *Id*. at 18. But Herndon's response argues, and her medical records indicate, that she complained of neck pain and was treated for "strain of neck muscle." Doc. #50 at 15; Doc. #56-5 at PageID #563. Thus, there is a genuine issue as to whether Herndon suffered an injury because of the interaction with Daniels.

The defendants also argue that Herndon's excessive force claim fails because any force used against her was objectively reasonable given the circumstances. Doc. #47 at 16. Citing *Graham*, Herndon argues that the force was unreasonable because she did not commit a serious offense, she was not a threat to Daniels, and she "could not have been resisting a lawful arrest because Defendant Daniels attempted to unlawfully arrest [her] for engaging in constitutionally protected activities." Doc. #50 at 8. The factual dispute as to how Daniels grabbed Herndon inhibits the Court's ability to analyze whether the force was reasonable. As such, the Court will evaluate whether Daniels' actions violated clearly established law. *See Garcia*, 957 F.3d at 600 ("Because it resolves the case, we begin and end with step two: was the alleged right clearly established at the time of the shooting?").

#### 4. Summary

Since Branch failed to establish a constitutional violation and thus cannot establish her claim for excessive force, summary judgment is warranted on Branch's claims. *See Freeman v. Gore*, 483 F.3d 404, 410–411 (5th Cir. 2007) (qualified immunity analysis ends if there is no constitutional violation). However, Herndon has shown a genuine issue of material fact as to whether her Fourth Amendment rights were violated by Daniels' use of force.

### B. Clearly Established

As Herndon has shown a genuine fact issue regarding whether Daniels' use of force was excessive, the next consideration is whether the force used against Herndon violated clearly established law. "The law is clearly established if there is factually similar, controlling case law from [the Fifth Circuit] or the Supreme Court." *Mason*, 806 F.3d at 277. "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 351 (5th Cir. 2012).

Citing *Hanks v. Roger*, 853 F.3d 738, 747 (5th Cir. 2017), Herndon argues that "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." Doc. #50 at 12. In *Hanks*, the plaintiff had exited his vehicle and was complying with instructions before the officer resorted to the use of force, administering a "half spear" blow to the

plaintiff's upper back and neck and forcing the plaintiff to the ground. 853 F.3d at 742–43. However, unlike in *Hanks*, Herndon can be seen on video failing to comply with Daniels' instructions and the force allegedly used by Daniels—grabbing Herndon's neck to remove her from the vehicle—differs significantly from the "half spear" used in *Hanks*. Under these circumstances, Herndon has not shown that *Hanks* would give Daniels fair warning that his actions would be unlawful. Herndon has thus failed to show that Daniels violated a clearly established right when he reached into the vehicle to remove her when she did not comply with instructions.

### C. Summary

Against the defendants' good faith assertion of qualified immunity, Branch failed to establish a constitutional violation. And though Herndon established a genuine fact question as to a constitutional violation, she failed to establish the right was clearly established. Thus, Daniels is entitled to qualified immunity and summary judgment is proper on the constitutional claims against him.

## V
## Official Claims

The defendants argue that Sheriff Walker and Carroll County are entitled to summary judgment on the plaintiffs' claims for failure to train or supervise Daniels because Sheriff Walker was not on the scene of the accident and because Daniels "is certified and has a clean record." Doc. #47 at 21–22.

### A. Sheriff Walker

"A failure to train claim requires that the plaintiff show (1) the supervisor's failure to train; (2) the failure to train resulted in the violation of the plaintiff's rights; and (3) the failure to train shows deliberate indifference." *Zadeh*, 928 F.3d at 473. The plaintiffs fail to identify or present any evidence showing how Walker, as Daniels' supervisor, failed to train Daniels, how the alleged

13

failure resulted in Daniels' conduct, or that the alleged failure shows deliberate indifference. As such, the claim against Walker fails.

### B. Carroll County

"To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy, and a violation of constitutional rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted).

> Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom, that is … a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (cleaned up).

In the portion of their response addressing § 1983 claims, the plaintiffs include a heading that asserts, "Defendants failed to properly follow and enforce their own policies and procedures set forth in Carroll County's Sheriff Department Policy Manual." Doc. #50 at 15. Following the heading, however, the brief includes only two sentences: "Under *Monell v. Department of Social Services*, 436 U.S, 658, 694 (1978), municipalities like Carroll County are considered 'persons' who may be sued directly under § 1983. A municipality may be sued for causing 'a constitutional tort through a policy statement, ordinance, regulation or decision[.]" *Id*. at 16. Elsewhere in their brief, the plaintiffs include a Carroll County policy and procedure manual as an exhibit and argue that Daniels failed to comply with portions of the manual. *Id*. at 20. However, they do not link Daniels' behavior to an official policy or show that his conduct is "a persistent, widespread practice of City officials or employees." Having failed to identify an official policy or custom behind the conduct, the plaintiffs' claims against Carroll County fail and summary judgment is warranted.

# VI
# State Law Claims

The defendants argue that should the Court find no federal claims against them, the Court should decline to exercise supplemental jurisdiction over the state law claims. Doc. #47 at 22–23. The plaintiffs argue for retention of the state law claims, contending that they will be severely prejudiced if the state law claims are dismissed because "this matter is nearly a year old, discovery has been conducted, [and] trial and hearing dates have been scheduled." Doc. #50 at 18.

Having determined that summary judgment is warranted on the federal claims, no federal question remains. Because diversity jurisdiction does not exist as the parties are not diverse, the Court must exercise its discretion on whether to exercise supplemental jurisdiction over the state law claims. *See Heggemeir v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016). The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides:

> The district courts may decline to exercise supplemental jurisdiction ... [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Courts in the Fifth Circuit treat the four circumstances enumerated in § 1367 as "statutory factors" to consider when evaluating supplemental jurisdiction. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Watson v. City of Allen*, 821 F.3d 634, 642 (5th Cir. 2016).

The defendants assert that they are immune from the state law claims under Mississippi law. The parties' briefs focus primarily on whether Daniels' conduct amounts to reckless disregard that would remove immunity under the Mississippi Tort Claims Act. These issues would be better

15

addressed by the state court. This Court therefore declines to exercise supplemental jurisdiction over the state law claims.

## VII
## Conclusion

The defendants' motion for summary judgment [46] is **GRANTED**.[10] Summary judgment is granted in the defendants' favor on the plaintiffs' federal claims. The plaintiffs' state law claims are **DISMISSED without prejudice**.[11]

**SO ORDERED**, this 22nd day of September, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[10] The motion asks "[t]hat this Court award these Defendants their attorneys' fees, costs and expenses associated with the defense of the instant civil action pursuant to Rule 11, *Federal Rules of Civil Procedure* and 42 U.S.C. §1988." Doc. #46 at 2. Because this request was not briefed, it has not been addressed by the Court.

[11] The pending motion to continue trial, Doc. #61, is now moot.

16